Andrew N. Krinsky (AK 0997)
Linda S. Roth (LR 8255)
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, New York 10018
(212) 216-8000

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- x
KEVIN KENNEY and WILLIAM H. BROWN  :
CO. Div. of OREGANI GRAPHICS, INC.,  :
                                                         :   Case No. 07 CIV 9832 (DAB)(RLE)
                        Plaintiffs,          :
                                                         :
        -against-                              :   **NOTICE OF MOTION**
                                                         :
COMPAS, INC., HEALHCARE FULFILLMENT :
SERVICES, LLC, STANLEY WOODLAND and :   Oral Argument Requested
MICHAEL MILLER,                         :
                                                         :
                        Defendants.        :
-------------------------------------------------------------- x

**PLEASE TAKE NOTICE** that, upon the Complaint (a copy of which is attached hereto), the Affidavit of Stanley Woodland sworn to December 13, 2007 and the Affidavit of Michael Miller sworn to December 13, 2007, and exhibits annexed thereto, and upon all prior pleadings and proceedings had herein, defendants Compas, Inc., Health Fulfillment Services, LLC (incorrectly denominated herein as Healthcare Fulfillment Services, LLC), Stanley Woodland and Michael Miller, by their attorneys Tarter, Krinsky & Drogin LLP, will move before the Honorable Deborah A. Batts, at the United States Courthouse, 500 Pearl Street, New York, New York, at a time to be fixed by the Court, for an order pursuant to Rules 12(b)(2) of the Federal Rules of Civil Procedure, dismissing the Complaint for lack of personal jurisdiction and for such other and further relief as the Court may deem just and proper.

PLEASE TAKE FURTHER NOTICE that in support of this motion, defendants shall rely upon Defendants' Memorandum of Law in Support of Their Motion to Dismiss for Lack of Personal Jurisdiction.

Dated: New York, New York
       December 14, 2007

>                       Respectfully submitted,
>
>                       **TARTER KRINSKY & DROGIN LLP**
>                       *Attorneys for Defendants*
>
>                  By: _____
>                       Andrew N. Krinsky (AK 0997)
>                       Linda S. Roth (LR 8255)
>                       1350 Broadway
>                       New York, NY 10018
>                       (212) 216-8000

To:  William A. Thomas, Esq.
     89 Fifth Avenue
     New York, New York  10003
     (212) 741-8900

     Attorney for Plaintiffs

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------X
KEVIN KENNEY and WILLIAM H. BROWN CO. Div.
of OREGANI GRAPHICS, INC.,

Index No.: 602951/07

Plaintiffs,

STATEMENT OF
SERVICE BY MAIL

-against-

COMPAS, INC., HEALTHCARE FULFILLMENT
SERVICES, LLC, STANLEY WOODLAND and
MICHAEL MILLER,

Defendants.
----------------------------------------X

To:   COMPAS, INC.
      4300 Haddonfield Road, Suite 200
      Pennsauken, New Jersey 08109

   The enclosed summons and complaint are served pursuant to section 312-a of the New York Civil Practice Law and Rules. To avoid being charged with the expense of service upon you, you must sign, date and complete the acknowledgement part of this form and mail or deliver one copy of the entire completed form to the sender within thirty (30) days from the date you receive it. You should keep a copy for your records or your attorney. If you wish to consult an attorney, you should do so as soon as possible before the thirty (30) days expire.

   If you do not complete and return the form to the sender within thirty (30) days, you (or the party on whose behalf you are being served) will be required to pay expenses incurred in serving the summons and complaint in any other manner permitted by law, and the cost of such service as permitted by law may be entered as a judgment against you.

   If you have received a complaint or petition with this statement, the return of this statement and acknowledgement does not relieve you of the necessity to answer the complaint or petition. The time to answer expires twenty (20) days after the day you mail or deliver this form to the sender. If you wish to consult with an attorney, you should do so as soon as possible before the twenty (20) days expire.

   If you are served on behalf of a corporation, unincorporated association, partnership or other entity, you must indicate under your signature your relationship to the entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.
It is a crime to forge a signature or to make a false entry on this statement or on the acknowledgement.

WILLIAM A. THOMAS
Attorney for Plaintiffs
89 Fifth Avenue, Suite 900
New York, New York 10003
(212) 741-8900

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
———————————————————————X

KEVIN KENNEY and WILLIAM H. BROWN CO. Div.
of OREGANI GRAPHICS, INC.,

                    Plaintiffs,

-against-

COMPAS, INC., HEALTHCARE FULFILLMENT
SERVICES, LLC, STANLEY WOODLAND and
MICHAEL MILLER,

                    Defendants.
———————————————————————X

Index No.: 602951/07

**SUMMONS**

NEW YORK
COUNTY CLERK'S OFFICE

AUG 31 2007

NOT COMPARED
WITH COPY FILE

TO THE ABOVE-NAMED DEFENDANTS:

    YOU ARE HEREBY SUMMONED to answer the Complaint in the above-entitled action and to serve a copy of your answer on plaintiff's attorney within twenty (2) days after the service of this Summons, exclusive of the day of service, or within thirty (3) days after service is complete where service is made in any other manner than by personal delivery within the State. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint. New York County is designated as the place of trial.

    The within action is for breach of joint venture and/or partnership, fraud, breach of contract and unjust enrichment. The basis of venue is plaintiffs' place of business.

Filed: August 31, 2007

*[signature]*
WILLIAM A. THOMAS
Attorney for Plaintiffs
89 Fifth Avenue, Suite 900
New York, New York 10003
(212) 741-8900

To: COMPAS, INC.
4300 Haddonfield Road, Suite 200
Pennsauken, New Jersey

HEALTHCARE FULFILLMENT SERVICES, LLC
2500 Sylon Boulevard
Hainesport, New Jersey

MICHAEL MILLER
4300 Haddonfield Road, Suite 200
Pennsauken, New Jersey

STANLEY WOODLAND
4300 Haddonfield Road, Suite 200
Pennsauken, New Jersey

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------X

KEVIN KENNEY and WILLIAM H. BROWN CO. Div.
of OREGANI GRAPHICS, INC.,

                        Plaintiffs,

-against-

COMPAS, INC., HEALTHCARE FULFILLMENT
SERVICES, LLC, STANLEY WOODLAND and
MICHAEL MILLER,

                        Defendants.
----------------------------------------X

Index No.: 602951/07

**COMPLAINT**

NEW YORK
COUNTY CLERKS OFFICE

AUG 31 2007

NOT COMPARED
WITH COPY FILE

       Plaintiffs, by their attorney, William A. Thomas, complaining of the defendants, allege as follows on information and belief:

### Parties

       1.     Plaintiff KEVIN KENNEY is and at all relevant times was a resident of New York County, and is and was an independent sales representative who has worked as an agent for plaintiff WILLIAM H. BROWN CO. Div. of OREGANI GRAPHICS, INC.

       2.     Plaintiff WILLIAM H. BROWN CO. Div. of OREGANI GRAPHICS, INC. (hereinafter Brown) is and at all relevant times was a wholly-owned division of Oregani Graphics, Inc., a New York Corporation with a place of business at 121 West 27th Street, New York, New York. Brown is and at all relevant times was a full-service commercial printing broker.

       3.     Defendant COMPAS, INC. (hereinafter Compas) is a privately held foreign corporation that does or transacts business in the State of New York, and/or

regularly contracts to supply goods or services in the State of New York, and/or regularly does or solicits business and/or derives substantial revenue from goods used or consumed or services rendered in the State of New York. Compas has a principal place of business at 4300 Haddonfield Road, Suite 200, Pennsauken, New Jersey, and is an advertising buying office for pharmaceutical companies, that is, it secures advertising space in various media. According to its website, Compas "is the largest corporate buyer of healthcare media and the only media buying service specializing in all categories of healthcare media."

4. Defendant HEALTHCARE FULFILLMENT SERVICES, LLC (hereinafter HFS) is a New Jersey limited liability company doing business as HFS Logistics and having a place of business at 2500 Sylon Boulevard, Hainesport, NJ 08036. HFS does or transacts business in the State of New York, and/or regularly contracts to supply goods or services in the State of New York, and/or regularly does or solicits business and/or derives substantial revenue from goods used or consumed or services rendered in the State of New York. According to its website, HFS operates with its sole "strategic partner," defendant Compas, to provide print-on-demand and "reprint management" for clients "across the pharmaceutical, healthcare, and financial services industries," along with related fulfillment and logistical services. HFS is, on information and belief, effectively owned, operated and controlled by Compas and/or its management.

5. Defendant MICHAEL MILLER (Miller) is a citizen of New Jersey and at all relevant times was an officer, agent, principal and/or owner of Compas, and a member and/or manager of HFS. Individually and in his corporate capacities, Miller does or transacts business in the State of New York, and/or regularly contracts to supply goods or

services in the State of New York, and/or regularly does or solicits business and/or derives substantial revenue from goods used or consumed or services rendered in the State of New York.

6. Defendant STANLEY WOODLAND (Woodland) is a citizen of New Jersey and at all relevant times was an officer, agent, principal and/or owner of Compas, and a member and/or manager of HFS. Individually and in his corporate capacities, Woodland does or transacts business in the State of New York, and/or regularly contracts to supply goods or services in the State of New York, and/or regularly does or solicits business and/or derives substantial revenue from goods used or consumed or services rendered in the State of New York.

7. Jurisidiction is asserted over all defendants under CPLR 301 and CPLR 302.

## Facts

8. In or about mid-1998, plaintiff Kenney had lunch in Philadelphia with defendant Miller. Kenney had previously known Miller through various business dealings, specifically Kenney's efforts to sell Compas sponsorships (i.e., advertising by Compass's clients) for a company called Silver Platter Education, which is the electronic (e.g., internet and CD-Rom) continuing medical education program produced by Harvard Medical School. Prior to this time, Compas had no experience whatsoever in the printing or reprinting business.

9. In the course of their meeting, Miller asked Kenney, "How can we make money together in printing?" As Compas had no prior experience in printing whatsoever, it was expressly understood that any ideas Kenney might share were confidential and

proprietary. Kenney proposed a venture by which Kenney and plaintiff Brown--a commercial printing broker--would, together with Miller and Compas, supply pharmaceutical companies with bulk reprints of clinical studies of their products for use by their sales and marketing personnel. Prior to that time pharmaceutical companies had typically obtained such reprints directly from the original publishers of the clinical studies at relatively high cost; reprints were done solely at the publishers' discretion and with their control. In what would be a first in the pharmaceutical industry, Kenney proposed to obtain the relevant licenses from the publishers of the clinical studies (that is, scholarly medical journals) and then handle the actual reprinting on behalf of the relevant pharmaceutical client at reduced cost to that client. Brown, as a print broker, would handle all physical aspects—that is, actual printing of the reprints and delivery to the clients; Compas, functioning as the sales team in light of its relationship with the pharmaceutical companies, would provide the client base and handle negotiations and communications with the pharmaceutical clients and the medical journals whose clinical studies were to be reprinted. With a handshake, Kenney, on behalf of himself and Brown, and Miller, on behalf of Compas, agreed that Brown and Compas would evenly divide all sums ultimately charged to the client over and above the base printing cost, irrespective of expenses, costs or overhead to either party. These amounts were exclusive of shipping and handling fees, for which it was agreed that neither side would receive any markup. It was additionally agreed that losses accruing to the venture, if any, would be borne equally by Compas and Brown.

10. Consistently with this agreement, the following week Kenney began implementation and development of the business plan for reprints at Compas's New

Jersey office. Thereafter, Kenney was physically present at Compas's office an average of twice a week for months, and engaged in continual phone contact, educating Miller--who previously had not known what a reprint was--on how to sell the program, and on why and how the print business works. These efforts continued in the face of skepticism on the part of high-ranking Compas personnel that such a business had any potential at all. Over the next three and a half years Brown and Kenney engaged with Compas in a continuing business to which Brown contributed its expertise in the arena of commercial print brokerage, and more specifically Kenney's intellectual capital regarding the implementation and development of a clinical-study-reprint business, and to which Compas contributed its relevant experience and client connections as an advertising buying office for pharmaceutical concerns. Brown, through Kenney and other agents including its CEO, Ken Newman, made repeated trips to Compas's corporate offices in order to conduct seminars and share with Miller and other Compas employees their extensive insights into the print and reprint industries as they related to marketing of pharmaceutical products. This work was done in furtherance of their joint venture with Compas and based on express representations by Miller that, consistently with the initial agreement, the "print" side of the venture would be handled exclusively by Kenney and Brown. In short, Compas, through Miller, and with the knowledge and participation of Woodland and others, used the promise of continuing business pursuant to the joint venture, together with its position in the field of pharmaceutical advertising, to extract from Kenney and Brown their intellectual capital regarding the print business generally, and the clinical-study reprint business specifically, in order to develop a highly profitable business from which it would subsequently cut them out.

11. In March, 2002, Compas breached its agreement with Brown and ceased to do business with Brown in connection with the pharmaceutical reprint business. Thereafter, plaintiffs ascertained that Compas had violated the terms of its agreement by, without limitation, (1) interfering surreptitiously with the printing and distribution side of the venture, including but not limited to falsely directing Brown to effect delivery of the reprints to bogus dropoff points not actually controlled by the clients, so that Compas could then alter and/or affect the form in which the shipments were ultimately received by the clients; (2) negotiating directly with printers in order to cut Brown out of the process altogether; and (3) ultimately going directly into the printing business itself, through its wholly-owned "strategic partner," defendant HFS. In short, Compas, through Miller, and with the knowledge and participation of Woodland and others, used the promise of continuing business pursuant to the joint venture, together with its position as an advertising buyer for the pharmaceutical industry, to deceive plaintiffs into sharing their vision and to extract their intellectual capital regarding the print business generally, and the clinical-study reprint business specifically, in order to develop a highly profitable business from which it would subsequently cut them out.

## FIRST CAUSE OF ACTION

12. Plaintiffs repeat and re-allege all previous allegations as if same were fully set forth.

13. Plaintiffs and Compas were joint venturers, and Compas accordingly owed Brown a fiduciary duty, which it has breached and continues to breach.

14. Plaintiffs have accordingly been damaged and continue to be damaged in an amount to be determined by the Court but believed to be not less than FIFTY MILLION DOLLARS ($50,000,000).

## SECOND CAUSE OF ACTION

15. Plaintiffs repeat and re-allege all previous allegations as if same were fully set forth.

16. Plaintiffs and Compas were de facto partners, and Compas breached the terms of their partnership agreement.

17. Plaintiffs have accordingly been damaged and continue to be damaged in an amount to be determined by the Court but believed to be not less than FIFTY MILLION DOLLARS ($50,000,000), and demand a full partnership accounting.

## THIRD CAUSE OF ACTION

18. Plaintiffs repeat and re-allege all previous allegations as if same were fully set forth.

19. Beginning in 1998 and continuing through at least September, 2001, Compas, through Miller, made express representations to Kenney and other agents of Brown that Compas would continue to observe the essential terms of the joint venture agreement, that is, that Compas's participation in the reprint industry would entail Brown's exclusive involvement with respect to printing. These representations, made at Compas's offices as well as in the course of telephone and other communications, were

intended to induce Brown and Kenney to share their knowledge and expertise of the print business generally and the clinical-study-reprint business specifically.

20. These representations were knowingly and materially false when made.

21. Additionally, Compas and its agents, who owed fiduciary duties to Brown and Kenney as joint venturers, failed to disclose its intentions to breach the agreement and to go behind Kenney's back in the use of other printers and in the ultimate development of Compas's own printing business.

22. As previously stated, Brown and its agents relied to their detriment on these misrepresentations and failures to disclose insofar as Brown continued to provide Compas with its extensive insight into the print industry generally and the reprint business specifically.

23. As a consequence of the aforementioned acts, Brown and Kenney as its agent have been damaged and continue to be damaged in an amount to be determined by the Court but believed to be not less than FIFTY MILLION DOLLARS ($50,000,000).

## FOURTH CAUSE OF ACTION

24. Plaintiffs repeat and re-allege all previous allegations as if same were fully set forth.

25. The aforedescribed agreement between Plaintiffs and Compas constituted a contract, which Compas breached and continues to breach.

26. Plaintiffs have accordingly been damaged and continue to be damaged in an amount to be determined by the Court but believed to be not less than FIFTY MILLION DOLLARS ($50,000,000).

## FIFTH CAUSE OF ACTION

27. Plaintiffs repeat and re-allege all previous allegations as if same were fully set forth.

28. Defendants have been and continue to be unjustly enriched by their continuing breaches and wrongful acts as above described.

29. Plaintiffs have accordingly been damaged and continue to be damaged in an amount to be determined by the Court but believed to be not less than FIFTY MILLION DOLLARS ($50,000,000).

WHEREFORE, plaintiffs demand judgment in their favor:

(1) On the first, second, third, and fifth causes of action, against defendants Compas and HFS in an amount to be determined by the Court but believed to be not less than FIFTY MILLION DOLLARS ($50,000,000), together with a partnership accounting;

(2) On the fourth cause of action, against all defendants, in an amount to be determined by the Court but believed to be not less than FIFTY MILLION DOLLARS ($50,000,000);

together with the costs and disbursements of this action and such other and further relief as the Court deems just, proper and equitable.

Dated: New York, New York
August 31, 2007

_____
WILLIAM A. THOMAS
Attorney for Plaintiffs
89 Fifth Avenue, Suite 900
New York, New York 10003
(212) 741-8900