Andrew N. Krinsky (AK 0997)
Linda S. Roth  (LR 8255)
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, New York  10018
(212) 216-8000

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

KEVIN KENNEY and WILLIAM H. BROWN     :
CO. Div. of OREGANI GRAPHICS, INC.,     :
    :
    :    Case No. 07 CIV 9832 (DAB)(RLE)
             Plaintiffs,     :
    :    **AFFIDAVIT OF**
      -against-     :    **STANLEY WOODLAND**
    :    **IN SUPPORT OF MOTION**
COMPAS, INC., HEALHCARE FULFILLMENT   :    **TO DISMISS**
SERVICES, LLC, STANLEY WOODLAND and   :
MICHAEL MILLER,     :
    :
            Defendants.     :

------------------------------------------------------------ x

STATE OF NEW JERSEY    )
                        ) ss.:
COUNTY OF CAMDEN    )

      STANLEY WOODLAND, being duly sworn, deposes and says:

      1.      I am the President of Compas, Inc. ("Compas"), one of the corporate

defendants in this matter.  I am also named as an individual defendant in this action.  I

submit this affidavit in support of defendants' motion to dismiss the Complaint herein

because this Court does not have personal jurisdiction over Compas, me or any of the

other named defendants as we are all citizens of New Jersey with insufficient contacts

with the State of New York to support the exercise of personal jurisdiction over us in

New York.

### PROCEDURAL HISTORY

2.     On or about October 16, 2007, I received a Statement of Service by Mail, a Summons and a Complaint at the offices of Compas. Copies of the Statement of Service by Mail, Summons and Complaint, which was initially filed by plaintiffs in the Supreme Court of the State of New York, County of New York, are attached hereto as Exhibit A. The Statement of Service by Mail, the Summons and the Complaint all arrived at the Compas office in New Jersey by regular United States mail. The Complaint includes purported causes of action for breach of fiduciary duty, breach of contract and misrepresentation arising out of an alleged 1998 handshake deal regarding the reprinting and distribution of published materials, namely the results of clinical studies, for use by pharmaceutical companies. Shortly after receiving the Complaint, defendants timely removed this action to the United States District Court for the Southern District of New York. As demonstrated below and in the Affidavit of Michael Miller sworn to on December 13, 2007 and submitted herewith, the Complaint should be dismissed because the New York courts – both state and federal – have no jurisdiction over the named defendants.

### COMPAS

3.     Compas is a corporation duly organized in accordance with the laws of the State of New Jersey with its principal place of business and actually its only place of business, located at 4300 Haddonfield Road, Suite 200, Pennsauken, New Jersey. Compas is not registered or qualified to do business in New York as a foreign entity and it is not required to be registered to do business in New York as a foreign business. Compas does not now have and for all relevant times from 1998 to the present did not

have an office in New York.

4.      Compas does not pay taxes in New York, employs no staff in New York and does not maintain or possess any bank accounts or any real or personal property in New York.

5.      Compas has never conducted any business with plaintiffs Kevin Kenney ("Kenney") and/or William H. Brown Co. Div. of Oregani Graphics, Inc. ("WHB") in New York. In fact, neither Compas nor I have ever had any contact at all with Kenney or WHB in New York. The Complaint alleges in paragraph 8 that Kenney had lunch with defendant Michael Miller ("Miller") (an officer of Compas) in Philadelphia and that it was during that lunch meeting that Kenney and Miller entered into a purported handshake agreement regarding the licensing, reprinting and distribution of clinical studies for potential customers in the pharmaceutical business.[1]  The Complaint further alleges in paragraph 10 that after the lunch meeting Kenney began implementation and development of a business plan for reprints "at Compas's New Jersey office." Paragraph 10 goes on to allege that approximately "twice a week for months" Kenney "was physically present at Compas's office" and that WHB "made repeated trips to Compas's offices" to discuss the print and reprint business as they related to the pharmaceutical products. As I previously stated, Compas's office is, and always has been, in New Jersey. I never traveled to New York to conduct business with plaintiffs and neither did any other person acting on behalf of Compas.

6.      Compas is an advertising buying office for the pharmaceutical industry. As an advertising buying office it places advertisements over the telephone or through e-

---

[1]      Miller, Compas and all of the defendants deny that they ever entered into the alleged agreement and deny that they are in any way liable to plaintiffs.

mail for its customers (who are not located in New York) with various media companies -- some of whom are located in New York. This is the only contact Compas has with New York.

## WOODLAND

7.    I live at 849 Boundry Road, Woodbury Heights, New Jersey. I do not pay taxes in New York. I do not maintain or possess any bank accounts in New York nor do I own, maintain or possess any real or personal property in New York. Moreover, I do not conduct any business in my individual capacity. Thus, the second sentence of paragraph 6 of the Complaint which alleges that I individually "transact[] business in the State of New York, and/or regularly contract[] to supply goods or services in the State of New York, and/or regularly do[] or solicit[] business and/or derive[] substantial revenue from goods used or consumed or services rendered in the State of New York is completely false. I did not have any meetings or contacts with Kenney or WHB about the alleged agreement or business arrangement that forms the basis of plaintiffs' Complaint. The only place my name even appears in the Complaint is in paragraphs 10 and 11 which allege that Miller acted with "the knowledge and participation of Woodland." Such a general allegation – which is devoid of any details regarding my specific conduct in New York or anywhere else for that matter – is not sufficient to subject me to the jurisdiction of the courts of New York.

## CONCLUSION

8.    Compas is a New Jersey corporation that is not qualified to do business in New York and which does not do business in New York. I am a citizen of New Jersey. I live there and I work there. Accordingly, this court lacks jurisdiction over me and/or

Compas and the Complaint against us should be dismissed.

**WHEREFORE**, it is respectfully requested that defendants' motion to dismiss the Complaint be granted.

_____
Stanley Woodland

Sworn to before me this
_13_ day of December 2007

_____
Notary Public

```
NOTARIAL SEAL
PAULETTE O THOMPSON
Notary Public
UPPER MERION TWP, MONTGOMERY COUNTY
My Commission Expires Nov 6, 2011
```

**EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
_____X

KEVIN KENNEY and WILLIAM H. BROWN CO. Div.
of OREGANI GRAPHICS, INC.,                                    Index No.: 602951/07

                                    Plaintiffs,              STATEMENT OF
                                                             SERVICE BY MAIL

          -against-

COMPAS, INC., HEALTHCARE FULFILLMENT
SERVICES, LLC, STANLEY WOODLAND and
MICHAEL MILLER,

                                    Defendants.
_____X

To:    COMPAS, INC.
       4300 Haddonfield Road, Suite 200
       Pennsauken, New Jersey 08109

       The enclosed summons and complaint are served pursuant to section 312-a of the
New York Civil Practice Law and Rules. To avoid being charged with the expense of
service upon you, you must sign, date and complete the acknowledgement part of this
form and mail or deliver one copy of the entire completed form to the sender within thirty
(30) days from the date you receive it. You should keep a copy for your records or your
attorney. If you wish to consult an attorney, you should do so as soon as possible before
the thirty (30) days expire.

       If you do not complete and return the form to the sender within thirty (30) days,
you (or the party on whose behalf you are being served) will be required to pay expenses
incurred in serving the summons and complaint in any other manner permitted by law,
and the cost of such service as permitted by law may be entered as a judgment against
you.

       If you have received a complaint or petition with this statement, the return of this
statement and acknowledgement does not relieve you of the necessity to answer the
complaint or petition. The time to answer expires twenty (20) days after the day you mail
or deliver this form to the sender. If you wish to consult with an attorney, you should do
so as soon as possible before the twenty (20) days expire.

       If you are served on behalf of a corporation, unincorporated association,
partnership or other entity, you must indicate under your signature your relationship to
the entity. If you are served on behalf of another person and you are authorized to receive
process, you must indicate under your signature your authority.
It is a crime to forge a signature or to make a false entry on this statement or on the
acknowledgement.

                                    WILLIAM A. THOMAS
                                    Attorney for Plaintiffs
                                    89 Fifth Avenue, Suite 900
                                    New York, New York 10003
                                    (212) 741-8900

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

————————————————————————X

KEVIN KENNEY and WILLIAM H. BROWN CO. Div.
of OREGANI GRAPHICS, INC.,

                             Plaintiffs,

       -against-

COMPAS, INC., HEALTHCARE FULFILLMENT
SERVICES, LLC, STANLEY WOODLAND and
MICHAEL MILLER,

                         Defendants.

————————————————————————X

Index No.: 602951/07

**SUMMONS**

NEW YORK
COUNTY CLERK'S OFFICE

AUG 3 1 2007

NOT COMPARED
WITH COPY FILE

TO THE ABOVE-NAMED DEFENDANTS:

     YOU ARE HEREBY SUMMONED to answer the Complaint in the above-entitled action and to serve a copy of your answer on plaintiff's attorney within twenty (2) days after the service of this Summons, exclusive of the day of service, or within thirty (3) days after service is complete where service is made in any other manner than by personal delivery within the State.  In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint. New York County is designated as the place of trial.

     The within action is for breach of joint venture and/or partnership, fraud, breach of contract and unjust enrichment. The basis of venue is plaintiffs' place of business.

Filed: August 31, 2007

WILLIAM A. THOMAS
Attorney for Plaintiffs
89 Fifth Avenue, Suite 900
New York, New York 10003
(212) 741-8900

To:     COMPAS, INC.
        4300 Haddonfield Road, Suite 200
        Pennsauken, New Jersey

        HEALTHCARE FULFILLMENT SERVICES, LLC
        2500 Sylon Boulevard
        Hainesport, New Jersey

        MICHAEL MILLER
        4300 Haddonfield Road, Suite 200
        Pennsauken, New Jersey

        STANLEY WOODLAND
        4300 Haddonfield Road, Suite 200
        Pennsauken, New Jersey

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

———————————————————————————— X

KEVIN KENNEY and WILLIAM H. BROWN CO. Div.
of OREGANI GRAPHICS, INC.,

Index No.: *602951/07*

                          Plaintiffs,

**COMPLAINT**

-against-

NEW YORK
COUNTY CLERKS OFFICE

COMPAS, INC., HEALTHCARE FULFILLMENT
SERVICES, LLC, STANLEY WOODLAND and
MICHAEL MILLER,

AUG 3 1 2007

NOT COMPARED
WITH COPY FILE

                          Defendants.

———————————————————————————— X

       Plaintiffs, by their attorney, William A. Thomas, complaining of the defendants,

allege as follows on information and belief:

### Parties

       1.     Plaintiff KEVIN KENNEY is and at all relevant times was a resident of

New York County, and is and was an independent sales representative who has worked

as an agent for plaintiff WILLIAM H. BROWN CO. Div. of OREGANI GRAPHICS,

INC.

       2.     Plaintiff WILLIAM H. BROWN CO. Div. of OREGANI GRAPHICS,

INC. (hereinafter Brown) is and at all relevant times was a wholly-owned division of

Oregani Graphics, Inc., a New York Corporation with a place of business at 121 West

27th Street, New York, New York. Brown is and at all relevant times was a full-service

commercial printing broker.

       3.     Defendant COMPAS, INC. (hereinafter Compas) is a privately held

foreign corporation that does or transacts business in the State of New York, and/or

regularly contracts to supply goods or services in the State of New York, and/or regularly

does or solicits business and/or derives substantial revenue from goods used or consumed

or services rendered in the State of New York. Compas has a principal place of business

at 4300 Haddonfield Road, Suite 200, Pennsauken, New Jersey, and is an advertising

buying office for pharmaceutical companies, that is, it secures advertising space in

various media. According to its website, Compas "is the largest corporate buyer of

healthcare media and the only media buying service specializing in all categories of

healthcare media."

    4.      Defendant HEALTHCARE FULFILLMENT SERVICES, LLC

(hereinafter HFS) is a New Jersey limited liability company doing business as HFS

Logistics and having a place of business at 2500 Sylon Boulevard, Hainesport, NJ

08036. HFS does or transacts business in the State of New York, and/or regularly

contracts to supply goods or services in the State of New York, and/or regularly does or

solicits business and/or derives substantial revenue from goods used or consumed or

services rendered in the State of New York. According to its website, HFS operates with

its sole "strategic partner," defendant Compas, to provide print-on-demand and "reprint

management" for clients "across the pharmaceutical, healthcare, and financial services

industries," along with related fulfillment and logistical services. HFS is, on information

and belief, effectively owned, operated and controlled by Compas and/or its management.

    5.      Defendant MICHAEL MILLER (Miller) is a citizen of New Jersey and at

all relevant times was an officer, agent, principal and/or owner of Compas, and a member

and/or manager of HFS. Individually and in his corporate capacities, Miller does or

transacts business in the State of New York, and/or regularly contracts to supply goods or

2

services in the State of New York, and/or regularly does or solicits business and/or

derives substantial revenue from goods used or consumed or services rendered in the

State of New York.

     6.    Defendant STANLEY WOODLAND (Woodland) is a citizen of New

Jersey and at all relevant times was an officer, agent, principal and/or owner of Compas,

and a member and/or manager of HFS.  Individually and in his corporate capacities,

Woodland does or transacts business in the State of New York, and/or regularly contracts

to supply goods or services in the State of New York, and/or regularly does or solicits

business and/or derives substantial revenue from goods used or consumed or services

rendered in the State of New York.

     7.    Jurisidiction is asserted over all defendants under CPLR 301 and CPLR

302.

<u>Facts</u>

     8.    In or about mid-1998, plaintiff Kenney had lunch in Philadelphia with

defendant Miller.  Kenney had previously known Miller through various business

dealings, specifically Kenney's efforts to sell Compas sponsorships (i.e., advertising by

Compass's clients) for a company called Silver Platter Education, which is the electronic

(e.g., internet and CD-Rom) continuing medical education program produced by Harvard

Medical School.  Prior to this time, Compas had no experience whatsoever in the printing

or reprinting business.

     9.    In the course of their meeting, Miller asked Kenney, "How can we make

money together in printing?" As Compas had no prior experience in printing whatsoever,

it was expressly understood that any ideas Kenney might share were confidential and

3

proprietary.  Kenney proposed a venture by which Kenney and plaintiff Brown--a commercial printing broker--would, together with Miller and Compas, supply pharmaceutical companies with bulk reprints of clinical studies of their products for use by their sales and marketing personnel. Prior to that time pharmaceutical companies had typically obtained such reprints directly from the original publishers of the clinical studies at relatively high cost; reprints were done solely at the publishers' discretion and with their control.  In what would be a first in the pharmaceutical industry, Kenney proposed to obtain the relevant licenses from the publishers of the clinical studies (that is, scholarly medical journals) and then handle the actual reprinting on behalf of the relevant pharmaceutical client at reduced cost to that client.  Brown, as a print broker, would handle all physical aspects—that is, actual printing of the reprints and delivery to the clients; Compas, functioning as the sales team in light of its relationship with the pharmaceutical companies, would provide the client base and handle negotiations and communications with the pharmaceutical clients and the medical journals whose clinical studies were to be reprinted.  With a handshake, Kenney, on behalf of himself and Brown, and Miller, on behalf of Compas, agreed that Brown and Compas would evenly divide all sums ultimately charged to the client over and above the base printing cost, irrespective of expenses, costs or overhead to either party.  These amounts were exclusive of shipping and handling fees, for which it was agreed that neither side would receive any markup.  It was additionally agreed that losses accruing to the venture, if any, would be borne equally by Compas and Brown.

10.    Consistently with this agreement, the following week Kenney began implementation and development of the business plan for reprints at Compas's New

Jersey office. Thereafter, Kenney was physically present at Compas's office an average of twice a week for months, and engaged in continual phone contact, educating Miller--who previously had not known what a reprint was--on how to sell the program, and on why and how the print business works. These efforts continued in the face of skepticism on the part of high-ranking Compas personnel that such a business had any potential at all. Over the next three and a half years Brown and Kenney engaged with Compas in a continuing business to which Brown contributed its expertise in the arena of commercial print brokerage, and more specifically Kenney's intellectual capital regarding the implementation and development of a clinical-study-reprint business, and to which Compas contributed its relevant experience and client connections as an advertising buying office for pharmaceutical concerns. Brown, through Kenney and other agents including its CEO, Ken Newman, made repeated trips to Compas's corporate offices in order to conduct seminars and share with Miller and other Compas employees their extensive insights into the print and reprint industries as they related to marketing of pharmaceutical products. This work was done in furtherance of their joint venture with Compas and based on express representations by Miller that, consistently with the initial agreement, the "print" side of the venture would be handled exclusively by Kenney and Brown. In short, Compas, through Miller, and with the knowledge and participation of Woodland and others, used the promise of continuing business pursuant to the joint venture, together with its position in the field of pharmaceutical advertising, to extract from Kenney and Brown their intellectual capital regarding the print business generally, and the clinical-study reprint business specifically, in order to develop a highly profitable business from which it would subsequently cut them out.

5

11.    In March, 2002, Compas breached its agreement with Brown and ceased to do business with Brown in connection with the pharmaceutical reprint business. Thereafter, plaintiffs ascertained that Compas had violated the terms of its agreement by, without limitation, (1) interfering surreptitiously with the printing and distribution side of the venture, including but not limited to falsely directing Brown to effect delivery of the reprints to bogus dropoff points not actually controlled by the clients, so that Compas could then alter and/or affect the form in which the shipments were ultimately received by the clients; (2) negotiating directly with printers in order to cut Brown out of the process altogether; and (3) ultimately going directly into the printing business itself, through its wholly-owned "strategic partner," defendant HFS.  In short, Compas, through Miller, and with the knowledge and participation of Woodland and others, used the promise of continuing business pursuant to the joint venture, together with its position as an advertising buyer for the pharmaceutical industry, to deceive plaintiffs into sharing their vision and to extract their intellectual capital regarding the print business generally, and the clinical-study reprint business specifically, in order to develop a highly profitable business from which it would subsequently cut them out.

## FIRST CAUSE OF ACTION

12.    Plaintiffs repeat and re-allege all previous allegations as if same were fully set forth.

13.    Plaintiffs and Compas were joint venturers, and Compas accordingly owed Brown a fiduciary duty, which it has breached and continues to breach.

14.    Plaintiffs have accordingly been damaged and continue to be damaged in an amount to be determined by the Court but believed to be not less than FIFTY MILLION DOLLARS ($50,000,000).

## SECOND CAUSE OF ACTION

15.    Plaintiffs repeat and re-allege all previous allegations as if same were fully set forth.

16.    Plaintiffs and Compas were de facto partners, and Compas breached the terms of their partnership agreement.

17.    Plaintiffs have accordingly been damaged and continue to be damaged in an amount to be determined by the Court but believed to be not less than FIFTY MILLION DOLLARS ($50,000,000), and demand a full partnership accounting.

## THIRD CAUSE OF ACTION

18.    Plaintiffs repeat and re-allege all previous allegations as if same were fully set forth.

19.    Beginning in 1998 and continuing through at least September, 2001, Compas, through Miller, made express representations to Kenney and other agents of Brown that Compas would continue to observe the essential terms of the joint venture agreement, that is, that Compas's participation in the reprint industry would entail Brown's exclusive involvement with respect to printing.  These representations, made at Compas's offices as well as in the course of telephone and other communications, were

intended to induce Brown and Kenney to share their knowledge and expertise of the print business generally and the clinical-study-reprint business specifically.

20.    These representations were knowingly and materially false when made.

21.    Additionally, Compas and its agents, who owed fiduciary duties to Brown and Kenney as joint venturers, failed to disclose its intentions to breach the agreement and to go behind Kenney's back in the use of other printers and in the ultimate development of Compas's own printing business.

22.    As previously stated, Brown and its agents relied to their detriment on these misrepresentations and failures to disclose insofar as Brown continued to provide Compas with its extensive insight into the print industry generally and the reprint business specifically.

23.    As a consequence of the aforementioned acts, Brown and Kenney as its agent have been damaged and continue to be damaged in an amount to be determined by the Court but believed to be not less than FIFTY MILLION DOLLARS ($50,000,000).

### FOURTH CAUSE OF ACTION

24.    Plaintiffs repeat and re-allege all previous allegations as if same were fully set forth.

25.    The aforedescribed agreement between Plaintiffs and Compas constituted a contract, which Compas breached and continues to breach.

26.    Plaintiffs have accordingly been damaged and continue to be damaged in an amount to be determined by the Court but believed to be not less than FIFTY MILLION DOLLARS ($50,000,000).

### FIFTH CAUSE OF ACTION

27.     Plaintiffs repeat and re-allege all previous allegations as if same were fully set forth.

28.     Defendants have been and continue to be unjustly enriched by their continuing breaches and wrongful acts as above described.

29.     Plaintiffs have accordingly been damaged and continue to be damaged in an amount to be determined by the Court but believed to be not less than FIFTY MILLION DOLLARS ($50,000,000).

WHEREFORE, plaintiffs demand judgment in their favor:

(1)     On the first, second, third, and fifth causes of action, against defendants Compas and HFS in an amount to be determined by the Court but believed to be not less than FIFTY MILLION DOLLARS ($50,000,000), together with a partnership accounting;

(2)     On the fourth cause of action, against all defendants, in an amount to be determined by the Court but believed to be not less than FIFTY MILLION DOLLARS ($50,000,000);

together with the costs and disbursements of this action and such other and further relief as the Court deems just, proper and equitable.

Dated:  New York, New York
        August 31, 2007

WILLIAM A. THOMAS
Attorney for Plaintiffs
89 Fifth Avenue, Suite 900
New York, New York 10003
(212) 741-8900

9